NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1488

FIBER OPTIC DESIGNS, INC.
and HOLIDAY CREATIONS, INC.,

Plaintiffs-Appellants,

v.

SEASONAL SPECIALTIES, LLC,

Defendant-Appellee.

_____

DECIDED:  March 3, 2006

_____

Before MAYER, RADER, and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge RADER.  Dissenting opinion filed by Circuit Judge MAYER.

RADER, Circuit Judge.

The United States District Court for the District of Minnesota denied the motion of Fiber Optic Designs, Inc. and Holiday Creations, Inc. (collectively "Fiber Optic") for a preliminary injunction.  After construing claims of U.S. Patent No. 6,830,358 (the '358 patent), the district court concluded that Fiber Optic was not likely to prevail on the merits of their patent infringement action against Seasonal Specialties, LLC (Seasonal).  Fiber Optic Designs, Inc. v. Seasonal Specialties LLC, Case No. 05-CV-660 RHK/JSM (D. Minn. July 1, 2005) (Order).  Because the district court erred in its claim

construction, this court <u>vacates</u> the denial of the motion for preliminary injunction and <u>remands</u> for further proceedings.

I.

As described in the '358 patent, light emitting diodes (LEDs) offer certain advantages over standard incandescent or fluorescent lighting sources. The '358 patent features LEDs in a decorative holiday light string. '358 patent, col. 1, ll. 27-44. In particular, the '358 patent "matches the AC voltage rating of the LEDs coupled in series to the AC power input without the need for additional power conversion." <u>Id.</u> col. 2, ll. 4-7. Claim 1 of the '358 patent, the only independent claim asserted, recites:

> 1. A light string comprising:
>
> a predetermined number of light emitting diodes (LEDs) and sockets forming individual electrical components electrically coupled in series to form at least one series block, each electrical component defining individual alternating current average drive voltages, the series block having a first electrical component and a last electrical component, and
>
> an alternating current electrical power supply having an average supply voltage,
>
> wherein a summation of said individual alternating current average drive voltages is substantially equal to said average supply voltage.

'358 patent, col. 16, l. 64 – col. 17, l. 9.

The defendant, Seasonal, sells light strings that include LEDs and sockets. Seasonal's light strings also include chip resistors attached to the LEDs within the individual sockets. On March 13, 2005, Fiber Optic sued Seasonal, alleging that Seasonal's light strings infringe claims 1, 2, 5, 6, and 16 of the '358 patent. Fiber Optic sought a preliminary injunction against Seasonal's ongoing sales of its light strings.

05-1488                                    2

After concluding that Seasonal had raised a "substantial question" by suggesting that the specification limited the scope of the '358 patent to light strings without current-limiting circuitry, the district court denied Fiber Optic's motion for a preliminary injunction. Order, slip op. at 15-16. Fiber Optic appeals.

II.

Ultimately this court reviews the district court's decision to deny or grant a preliminary injunction for an abuse of discretion, Globetrotter Software, Inc. v. Elan Computer Group, Inc., 236 F.3d 1363, 1367 (Fed. Cir. 2001), but underlying legal issues, such as claim construction, receive no deference. Jack Guttman, Inc. v. Kopykake Enters., 302 F.3d 1352, 1356 (Fed. Cir. 2002).

As an initial matter, this court notes that the district court characterized its decision as a determination that Seasonal raised a substantial question about claim construction. Despite the ambiguities in that characterization, this court reads the district court's order as construing claim 1 to exclude any current limiting circuitry. The district court's order fully addresses the parties' arguments on claim construction in terms of the specification and the prior art. The district court's order does not appear to contemplate additional open questions or issues requiring further development on the question of additional current limiting circuitry. Thus, this court proceeds to review the district court's claim construction without deference. Compare Int'l Commc'n Materials, Inc. v. Ricoh Co., 108 F.3d 316, 318-19 (Fed. Cir. 1997) (stating, in an appeal from a denial of a preliminary injunction motion: "where a district court . . . acknowledges that there are substantial open issues and questions that must be litigated pertaining to claim construction . . . our role as an appellate court, absent an abuse of discretion,

05-1488                                    3

should be to provide the district [court] and parties the opportunity to complete the picture") (quotes omitted).

On its face, claim 1 of the '358 patent does not include any language excluding current-limiting circuitry. Nevertheless, as this court recently explained in Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc), the descriptions in the specification can limit the apparent breadth of a claim in two instances: (1) where the specification reveals a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess; and (2) where the specification reveals an intentional disclaimer, or disavowal, of claim scope by the inventor. 415 F.3d at 1316. This case does not feature either reason to read a limitation from the specification into the claims. Thus, the standard rule that a claim construction should decline to incorporate additional limitations from the specification governs. See Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1186-87 (Fed. Cir. 1998).

In its order, the district court did not identify a specific term in claim 1 that required interpretation. While Seasonal's arguments to the district court, and to this court at oral argument, referred generally to the third limitation of claim 1 as being the limitation associated with the exclusion of additional circuitry, the district court did not appear to embrace that argument in its decision. Instead, the district court construed claim 1 without an apparent focus on any claim term. This court has explained that a claim "must explicitly recite a term in need of definition before a definition may enter the claim from the written description." Renishaw PLC v. Marposs Societa' Per Azioni, 158 F.3d 1243, 1248 (Fed. Cir. 1998).

Without any apparent support in the trial court's order, Seasonal attempts to bolster that construction by arguing that the district court was interpreting "electrical component." Seasonal adds that the "summation" of claim 1 then requires the exclusion of "electrical components" with current-limiting circuitry. Seasonal's rather questionable patina on the district court's claim construction, however, does not save it. Claim 1's summation refers to "said individual alternating current average drive voltages." The claim further identifies these individual AC average drive voltages with the individual electrical components. Accordingly, claim 1 provides that LEDs and sockets form the individual electrical components, but does not exclude the possibility of additional elements within the electrical components that would then appear as part of the summation.

On the other hand, if claim 1 excluded light strings with current limiting circuitry in addition to, but not within, the electrical components, that current limiting circuitry outside the electrical components identified in the claim would not affect the summation at all. After all, the claim specifically makes the summation depend solely on the electrical components and their AC average drive voltages.

Thus, claim 1 could be interpreted, consistent with its language and the specification, to permit current limiting circuitry within the electrical components. These additional current limiting features would then count as part of the summation. Alternatively, claim 1 could be interpreted, consistent with its language and the specification, to permit current limiting circuitry outside the electrical components. In that case, those additional current limiting features would have nothing to do with the

summation of electrical components. Under either interpretation, the language of claim 1 does not exclude current-limiting circuitry.

Where the meaning of no particular claim term is in dispute, a patentee can nevertheless limit a claim with an intentional disclaimer, or disavowal, of claim scope. Phillips, 415 F.3d at 1316. As evidence of disclaimer of light strings having current limiting circuitry, the district court appeared to rely on the following statements in the '358 specification:

> "In order to directly drive a network of diodes without current-limiting circuitry, the voltage of each series block of diodes must be matched to the input source voltage." '358 patent, Abstract.

> "FIG. 10 shows the preferred embodiment of the invention, wherein a network of diodes, consisting of LEDs, is directly driven by the AC source without any current-limiting circuitry." '358 patent, col. 8, ll. 51-54.

> "The invention in FIG 10 may have additional circuitry . . . to perform functions other than current-limiting." '358 patent, col. 9, ll. 1-3.

> "The only vital feature of the diode network is that all diodes are directly driven from the AC power source, without any form of current-limiting circuitry." '358 patent, col. 9, ll. 10-13.

Order, slip op. at 16-18. In addition, the district court noted a statement made by Fiber Optic's attorney during oral argument before the trial court: "[The] [p]rior art talked about adding up the DC summations, it didn't work, you put in a resistor and you made a best guess as to how to solve the problem." Id. at 17. In the district court's view, the repetitious use of "without current-limiting circuitry" in the specification "bolster[ed] the argument" that Fiber Optic "explicitly and unequivocally" disclaimed light strings with current-limiting circuitry. Id. at 18.

In contrast to SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc., 242 F.3d 1337 (Fed. Cir. 1998), and the related cases cited by the district court,

the '358 specification does not clearly disclaim any particular subject matter. Read in context, the above statements show that the AC summation method described in the '358 patent overcomes the need for current-limiting circuitry in LED light strings. These statements, however, at no point express that commercial embodiments of the invention will never include such circuitry. Rather, the specification provides for LED light strings "either without any additional circuitry (AC drive), or with only minimal circuitry (DC drive)." '358 patent, col. 3, ll. 57-59. The reference to "minimal circuitry" suggests that the invention actually envisions that embodiments could employ additional circuitry affecting the current.

The '358 patent also explains that "each LED may have internal circuitry to provide for intermittent on-off blinking and/or intermittent LED sub-die color changes." '358 patent, col. 3, ll. 39-43. Additional circuitry that would intermittently turn off an LED would necessarily be current limiting. Thus, the specification again described an instance where the invention could feature current limiting circuitry. These examples show that the specification describes an invention that operates without further current-limiting circuitry, but that is very distinct from excluding all uses of that particular additional feature.

Furthermore, most of the statements from the specification relied upon by the district court come from the description of the preferred embodiment, rather than applying to the invention as a whole. This case thus contrasts starkly with SciMed, where the specification stated that "all embodiments of the present invention contemplated and disclosed herein" used the disputed annular lumen structure. SciMed, 242 F.3d at 1343. The district court is correct in noting that this statement was

not the only basis for the <u>SciMed</u> court's decision, and that there are a number of other cases where the specification was found to limit the claims in the absence of comparable explicit language. <u>Order</u>, slip op. at 19. Nonetheless, neither the statements in the '358 specification nor that of Fiber Optic's attorney constitute such a disclaimer, either individually or in the aggregate.

Finally, a comparison of dependent claim 2 with claim 1 also supports the conclusion that claim 1 is not limited to light strings without current-limiting circuitry. Claim 2 provides:

> 2. The light string of claim 1, where said first electrical component is directly coupled intermediate a source end and a terminal end of a first set of wires and the last electrical component directly coupled intermediate the source end and the terminal end of a second set of wires, the light string being free from additional circuitry intermediate the first electrical component and the source end of the first set of wires, between each of the electrical components, and intermediate the last electrical component and the source end of the second set of wires, and
>
>> wherein a first connector is coupled to both the source end of the first set of wires and the source end of the second set of wires which connector facilitates a direct connection between the first electrical component and a first side of said alternating current electrical power supply, and the last electrical component and a second side of the alternating current electrical power supply.

'358 patent, col. 17, ll. 10-24. While lengthy, claim 2 limits the structure to a plug, wires, and electrical components. Thus, claim 2 expressly excludes additional circuitry between individual electrical components or between the electrical components and the power supply. Because much of the language of claim 2 would be superfluous if claim 1 were interpreted to require the absence of additional current limiting circuitry, claim differentiation counsels against the district court's construction. <u>See Phillips</u>, 415 F.3d

1303, 1324 (Fed. Cir. 2005) ("The inclusion of . . . a specific limitation on the term 'baffles' in claim 2 makes it likely that the patentee did not contemplate that the term 'baffles' already contained that limitation."). Although claim differentiation serves best as a guideline, rather than a rule, see Fantasy Sports Props. v. Sportsline.com, 287 F.3d 1108, 1115-16 (Fed. Cir. 2002), this court has noted that it works best when dependent claims show a distinction over related independent claims, as in this case. See Curtiss-Wright Flow Control Corp. v. Velan, Inc., ___ F.3d ___ (Fed. Cir. 2006).

For these reasons, the district court erred in its conclusion that Seasonal had raised a substantial question that claim 1 of the '358 patent is limited to light strings without current-limiting circuitry. Claim 1 is not so limited. This error in claim construction necessitates reevaluation by the district court of the motion for preliminary injunction as a whole. See generally Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("The court must properly interpret the claims, because an improper claim construction may distort the infringement and validity analyses.").

CONCLUSION

Because the district court erred in its claim construction, this court vacates the denial by the district court of appellants' motion for preliminary injunction and remands for further proceedings consistent with this opinion.

NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1488

FIBER OPTIC DESIGNS, INC.
and HOLIDAY CREATIONS, INC.,

Plaintiffs-Appellants,

v.

SEASONAL SPECIALTIES, LLC,

Defendant-Appellee.

MAYER, <u>Circuit Judge</u>, dissenting.

I would sustain the ruling of the district court because a hearing has not yet been held to resolve claim construction issues, and because the decision pertained to a preliminary injunction. Given the information available to the trial court at the time of the ruling and the relatively undeveloped state of the record, it was not an abuse of discretion to conclude that Seasonal raised a substantial question about infringement of the 6,830,358 patent.